**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | | |
|---|---|---|
| MATTHEW D. WARREN, Individually, and as Personal Representative of the Estate of Marisa Warren, | ) | C/A No.: 9:26-cv-4361-RMG |
| Plaintiff, | ) | |
| v. | ) | COMPLAINT (Non-Jury — 28 U.S.C. § 2402) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**NATURE OF THE ACTION**

1. Marisa Warren was twenty-eight years old when she delivered her first child by cesarean section on November 23, 2022. Sixteen days later, she was dead of septic shock arising from an infection of the uterus that had been left undiagnosed and untreated through two days of hospitalization.

2. When Marisa returned to Beaufort Memorial Hospital on December 7, 2022, just two weeks after her cesarean delivery, having collapsed at home, tachycardic, in pelvic pain, bleeding, and with a white blood cell count nearly twice the upper limit of normal, the obstetricians responsible for her care never once performed a standard pelvic exam. Her white blood cell count climbed from 22,500 to 58,000 to 83,600 to more than 106,000. She was treated for a urinary tract infection.

3. Marisa was transferred to the Medical University of South Carolina ("MUSC") on the morning of December 9, 2022. Within hours of her arrival, a physician there performed the pelvic examination that had not been performed at any point over the preceding two days. The exam revealed frank pus in the vagina. She was taken emergently to the operating room, where

her uterus was found devitalized and necrotic, and it was removed. She died that evening at 9:30 p.m.

4. This action is brought against the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–2680, and 42 U.S.C. § 233, for the negligence of Glenn L. Werner, M.D., and Kevin J. Blau, D.O., who at all relevant times were deemed employees of the Public Health Service.

## PARTIES

5. Plaintiff Matthew D. Warren is a citizen and resident of Beaufort County, South Carolina. He is the surviving spouse of Marisa Warren, deceased.

6. Marisa Warren was born January 10, 1994, and died on December 9, 2022, at the age of twenty-eight. At the time of her death, she was a citizen and resident of Beaufort County, South Carolina.

7. By Certificate of Appointment executed March 2, 2023, the Probate Court for Beaufort County, South Carolina, appointed Matthew D. Warren as the duly qualified Personal Representative of the Estate of Marisa Warren, Case No. 2023ES0700259. That appointment remains in full force and effect.

8. This Wrongful Death action is brought under S.C. Code Ann. § 15-51-20 for the benefit of the statutory beneficiaries of Marisa Warren, her surviving spouse, Matthew D. Warren, and her surviving daughter, L.M.W., a minor born November 23, 2022. As to the Survival claim, for the benefit of her Estate.

9. Defendant is the United States of America.

10. Upon information and belief, at all times relevant to this Complaint, Beaufort-Jasper-Hampton Comprehensive Health Services, Inc. ("BJHCHS") was a federally supported health

center that had been deemed an employee of the Public Health Service for purposes of 28 U.S.C. §§ 1346(b) and 2671–2680, pursuant to 42 U.S.C. § 233(g)–(n) and the Federally Supported Health Centers Assistance Act.

11. Upon information and belief, at all times relevant to this Complaint, Glenn L. Werner, M.D., and Kevin J. Blau, D.O., were physicians employed by or under contract with BJHCHS, practicing obstetrics and gynecology through Port Royal OBGYN, and were acting within the scope of that employment or contract in rendering the care described below. They were therefore deemed employees of the Public Health Service, and the United States is the sole proper defendant as to claims arising from their acts and omissions. 42 U.S.C. § 233(a), (g).

12. Drs. Werner and Blau are accordingly not named as defendants in this action. All references in this Complaint to the conduct of Drs. Werner and Blau are allegations of conduct for which the United States is answerable.

13. The United States is liable to Plaintiff in the same manner and to the same extent as a private individual would be under the law of South Carolina, where the acts and omissions complained of occurred. 28 U.S.C. §§ 1346(b)(1), 2674.

**JURISDICTION AND VENUE**

14. This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1346(b)(1), the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, and 42 U.S.C. § 233.

15. Venue is proper in this District under 28 U.S.C. § 1402(b) because Plaintiff resides in this District and because the acts and omissions complained of occurred in this District.

16. This civil action is assignable to the Beaufort Division under Local Civil Rule 3.01 (D.S.C.), because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Beaufort County, South Carolina, and Plaintiff resides in Beaufort County.

17. Trial of this action is to the Court without a jury. 28 U.S.C. § 2402.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

18. On December 5, 2024, Plaintiff presented an administrative tort claim to the United States Department of Health and Human Services on Standard Form 95, by electronic mail, facsimile, and United Parcel Service, stating a sum certain and setting forth the claims of Matthew D. Warren, individually and as Personal Representative of the Estate of Marisa Warren.

19. The administrative claim was accompanied by Marisa Warren's medical records from Beaufort Memorial Hospital, the Medical University of South Carolina, and Port Royal OBGYN; the Affidavits of Merit of Lora Princ, M.D., and Ronald W. Flenner, M.D.; Marisa Warren's death certificate; and Matthew D. Warren's Certificate of Appointment as Personal Representative. Copies of the claim and cover correspondence were also directed to the General Counsel for Region 4 of the Department of Health and Human Services, to Port Royal OBGYN, and to BJHCHS.

20. By letter dated January 13, 2025, the Office of the General Counsel of the Department of Health and Human Services acknowledged receipt of the administrative claim on December 5, 2024, assigned it Claim No. 25-04259, and requested additional substantiating evidence, including diagnostic imaging, itemized medical and funeral bills, autopsy materials, and evidence of counsel's authority to represent the claimant.

21. Plaintiff furnished the substantiating evidence requested by the Agency.

22. The Agency has issued no further request and has made no final disposition of the administrative claim.

23. More than six months have elapsed since the administrative claim was presented to and received by the Agency. Pursuant to 28 U.S.C. § 2675(a), Plaintiff exercises his option to deem the Agency's failure to make final disposition of the claim a final denial and brings this action.

24. The administrative claim was presented within two years after Plaintiff's claims accrued. 28 U.S.C. § 2401(b).

25. All conditions precedent to the filing of this action have been satisfied.

26. Pursuant to 28 U.S.C. § 2675(b), Plaintiff does not seek in this action any sum in excess of the amount stated in the administrative claim presented to the Agency.

## FACTUAL ALLEGATIONS

***A. The cesarean delivery: November 23, 2022***

27. Marisa Warren was a healthy twenty-eight-year-old woman pregnant with her first child. She received prenatal care through Port Royal OBGYN, where Dr. Werner was her obstetrician. A group B streptococcus culture obtained during her antepartum care was negative.

28. At thirty-eight weeks' gestation, Marisa was admitted to Beaufort Memorial Hospital for induction of labor because of worsening symptoms of preeclampsia. The induction failed.

29. On November 23, 2022, Dr. Werner delivered Marisa's daughter by primary low transverse cesarean section. Birth was recorded at 3:44 p.m. The placenta was delivered at 3:45 p.m. by manual removal.

30. Cesarean delivery and manual removal of the placenta are both recognized risk factors for postpartum endometritis, which is an infection of the lining of the uterus.

31. Marisa was discharged home with her daughter. She was scheduled to return for a two-week postoperative visit.

***B. December 7, 2022: presentation to the Emergency Department***

32. In the days before her scheduled postoperative visit, Marisa developed lower abdominal cramping pain and vaginal bleeding with clots. On the morning of December 7, 2022, she fainted at home in front of her husband.

33. Marisa arrived at the Beaufort Memorial Hospital Emergency Department by ambulance at 7:52 a.m. The triage note recorded that she had arrived following a syncopal episode, that she was two weeks postpartum from a cesarean section at thirty-eight weeks, and that she complained of lower abdominal painful cramping and vaginal bleeding over the preceding two to three days. The triage note recorded a "suspected new infection."

34. At 7:58 a.m., her blood pressure was 111/67, her heart rate was 122, her respiratory rate was 18, and her oxygen saturation was 95%. She rated her pelvic pain 8 out of 10. Her heart rate remained between 105 and 124 throughout the morning.

35. Laboratory studies obtained in the Emergency Department showed a white blood cell count of 22,500 (reference 3,000–11,600); hemoglobin 15.8 (11–15.5); hematocrit 49 (31–46); segmented neutrophils 86.4% (35–80); absolute segmented neutrophils 19.4 (1.05–9.28); C-reactive protein 15 (reference less than 1); and high-sensitivity troponin I of 30.70 (0–15).

36. A urinalysis showed 2+ leukocyte esterase, greater than 50 white blood cells, 6 to 10 red blood cells, a specific gravity of 1.037, but no bacteria.

37. Computed tomography of the chest showed no pulmonary embolus. Computed tomography of the abdomen and pelvis, read by Dr. Phillip Blalock at 9:44 a.m., reported "[h]yperdense ascites with focal areas of increased density in the right lower quadrant, most

likely clots. Findings are compatible with a hemoperitoneum... The uterus is postpartum, and the patient is status post recent cesarean section."

38. At 10:02 a.m., the Emergency Department clinical impression was recorded as sepsis. The note stated: "Patient evaluated fluid boluses. Currently septic secondary to pyelonephritis. Case discussed with Dr. [Werner] will have him admit to the hospital for further supportive care."

39. At 11:06 a.m., Marisa was admitted to Beaufort Memorial Hospital for observation by Dr. Werner. The admitting primary diagnosis was pyelonephritis and dehydration.

***C. December 7, 2022: Dr. Werner's evaluation***

40. Dr. Werner examined Marisa on December 7 and dictated his History and Physical at 4:58 p.m.

41. Dr. Werner recorded that Marisa's abdomen was "soft, but tender to deep palpation in both lower quadrants," that her incision was "healing nicely," and that there was no mass or hernia.

42. Dr. Werner did not perform a pelvic examination. Under the heading "Pelvic," his note reads: "deferred."

43. Dr. Werner did not order a pelvic ultrasound.

44. Dr. Werner recorded that Marisa had "some heavier bleeding the last few days, but this now has also stopped," and that he had reviewed the imaging with a radiologist, which "showed a normal-appearing postpartum postoperative uterus with a normal endometrial stripe for that situation."

45. Dr. Werner's impression was "two weeks post-C section with elevated white count and evidence of possible urinary tract infection." He attributed the free pelvic fluid to Marisa's

"recent preeclampsia," continued a single agent antibiotic, and wrote: "Continue rehydration and hopefully her white count will lessen and continue to improve."

46. The differential Dr. Werner pursued on December 7th was a urinary tract infection and a possible bladder injury. At 2:44 p.m., he ordered a repeat computed tomography of the abdomen and pelvis without contrast, stating the reason for the examination as "abd/pelvis pain r/o bladder injury." That study, read at 3:36 p.m., found no bladder injury and persistent ascites.

47. No physician evaluated Marisa's uterus as the source of her infection on December 7, 2022.

***D. December 8, 2022: the white count triples; Dr. Blau rounds***

48. Laboratory studies drawn early on the morning of December 8, 2022, showed that Marisa's white blood cell count had risen from 22,500 to 58,000. Her bands were 7 (reference 0–5). Her creatinine had nearly doubled, from 0.83 to 1.45. Her troponin had risen from 30.70 to 75.10.

49. The reviewing pathologist appended a note to the complete blood count: "marked leukocytosis with left shift c/w infection/inflammatory response."

50. Dr. Werner ordered gentamicin and clindamycin, which would be the standard of care for an obstetric infection. At 7:21 a.m., those orders were discontinued by the consulting hospitalist in favor of coverage directed at a urinary source. Marisa received a single 900-milligram dose of clindamycin before the order was stopped.

51. Dr. Blau, Dr. Werner's partner, rounded on Marisa that morning and dictated a progress note at 8:57 a.m.

52. In that note, Dr. Blau recorded that Marisa's obstetric differential "would include surgical site infection or mastitis or endometritis"; that she was not breastfeeding, so mastitis was

unlikely; that her incision was clean, dry and intact; and that "her abdomen is tender and with her low-grade fever and white count she does fulfill diagnostic criteria for endometritis however the delayed onset is less common, but she is being covered for pathogens of that source at this time."

53. Marisa was not, in fact, being covered for the pathogens of that source at that time. The antibiotics directed at obstetric pathogens had been discontinued approximately ninety minutes earlier.

54. Dr. Blau recorded that "[a]t this point UTI is our suspected source."

55. Dr. Blau did not perform a pelvic examination.

56. Dr. Blau did not order a pelvic ultrasound.

57. Marisa continued to deteriorate throughout the day. Her lactic acid rose to 2.3 at 6:00 a.m. and 2.8 at 9:19 a.m. At 10:48 a.m., her oxygen saturation was 93% and her blood pressure 95/78. At 12:04 p.m., her heart rate was 136.

58. At approximately 3:30 p.m., Marisa's nurse was called to her room. Marisa became flushed; her blood pressure read 56/29; a manual blood pressure could not be obtained; her color was "very pale," and her lips "appeared grey." She was transferred emergently to the intensive care unit.

59. The critical care physician who assumed her care at 4:57 p.m. assessed "shock possibly secondary to infected hematoma versus delayed pelvic bleeding," broadened her antibiotics, and ordered repeat imaging to "re-evaluate abdomen for abscess."

60. At 6:26 p.m., Marisa's white blood cell count was 83,600.

61. At 9:29 p.m. on December 8, a bedside pelvic ultrasound was read as showing a "postpartum uterus with some persistent thickening of the endometrium, which may represent

blood products. Retained products of conception cannot be completely excluded. Moderate ascites with simple fluid."

62. No obstetrician acted on that finding.

63. At 11:49 p.m., Marisa's lactic acid was 8.3.

***E. December 9, 2022: transfer, hysterectomy, and death***

64. At 3:00 a.m. on December 9, 2022, Marisa was intubated for acute hypoxic respiratory failure. At 3:10 a.m., her white blood cell count was reported at 120,400, later corrected to 106,500. Her lactic acid was 16.2. She was in disseminated intravascular coagulation with multi-organ failure.

65. Dr. Blau was called to the intensive care unit and dictated a progress note at 5:52 a.m. The note contains no physical examination findings. It records that he "[r]eviewed imaging with ICU team," that he "discussed case with OB at MUSC," and that he and the MUSC obstetrician "discussed group A strep, nec fasc and no evidence on imaging of free air."

66. Dr. Blau did not perform a pelvic examination.

67. At 7:04 a.m., the critical care physician dictated: "OB service has been actively involved in care. They have reviewed all abdominal imaging, including a pelvic ultrasound, as well as examined the patient. They do not appreciate any significant obstetric or postpartum concerns at this time." He arranged emergent transfer to the Medical University of South Carolina, noting that Marisa "has exceeded the capabilities of Beaufort Memorial Hospital."

68. Marisa arrived at MUSC at approximately 11:12 a.m. on December 9, 2022, in septic shock requiring multiple vasopressors and mechanical ventilation.

69. At approximately 2:33 p.m., the MUSC gynecology team performed a pelvic examination, the first performed on Marisa since her admission two days earlier. The note records: "spec exam with frank pus in the vagina, cultures collected."

70. The MUSC assessment stated: "uterine infection: frank purulence on spec exam, patient floridly septic requiring multiple pressors. We discussed that given her rapid decompensation in the setting of recent cesarean section with frank pus in the vagina, group A strep is the likely culprit although at this time we cannot wait for cultures to come back before proceeding with intervention given the critically ill condition of this patient."

71. The anesthesiologist's preoperative evaluation recorded that Marisa was going "[t]o the OR for heroic efforts to obtain source control, will die without surgery."

72. Surgery began at 3:39 p.m. The operative findings were "[s]ignificant edema with ascites noted on entry. Bowel intact. Uterus devitalized with apparent necrosis. Significant inflammation in pelvis." Marisa underwent an exploratory laparotomy and hysterectomy.

73. The procedure concluded at 6:12 p.m. Marisa was returned to the intensive care unit, where she continued to decline and coded twice. She was pronounced dead at 9:30 p.m. on December 9, 2022.

74. Surgical pathology of the uterus reported "extensive endometrial and lower uterine segment ulceration, acute inflammation with abscess and necrosis."

75. Marisa's death certificate lists the immediate cause of death as multi-organ failure and disseminated intravascular coagulation, due to septic shock from a uterine source status post cesarean section, and identifies as a significant contributing condition "status post cesarean section, intrauterine infection leading to septic shock and disseminated intravascular coagulation."

76. Marisa Warren was survived by her husband, Matthew D. Warren, and by the daughter she had delivered sixteen days earlier.

## AFFIDAVITS OF MERIT

77. Contemporaneously with the filing of this Complaint, and to the extent required by S.C. Code Ann. § 15-36-100, Plaintiff files the Affidavit of Lora Princ, M.D., a board-certified obstetrician and gynecologist, attached hereto as Exhibit A, and the Affidavit of Ronald W. Flenner, M.D., FACP, a board-certified infectious disease physician, attached hereto as Exhibit B. Each affiant is an expert competent to testify and licensed to practice medicine, each has reviewed the pertinent medical records, and each has set forth at least one negligent act or omission and the factual basis for it.

## COUNT I
**Negligence — Wrongful Death**
**(S.C. Code Ann. § 15-51-10, et seq.)**

78. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

79. At all relevant times, Drs. Werner and Blau owed Marisa Warren a duty to exercise that degree of skill, care, knowledge, and judgment ordinarily possessed and used by members of their profession, practicing in the same or similar circumstances, under like surrounding conditions, and in like localities.

80. Drs. Werner and Blau breached that duty and were negligent, grossly negligent, careless, and reckless in the following particulars, among others:

a. In failing to perform a pelvic examination on a woman two weeks removed from cesarean delivery who presented with syncope, tachycardia, pelvic pain, vaginal bleeding, and marked leukocytosis;

b. In failing to perform a pelvic examination on December 8, 2022, when Marisa's white blood cell count had risen to 58,000 with a left shift, her creatinine had doubled, and she remained tachycardic and febrile;

c. In failing to order a pelvic ultrasound on December 7 or December 8, 2022, to evaluate the uterus as a source of infection;

d. In failing to recognize and act upon the pelvic ultrasound of December 8, 2022, which reported persistent endometrial thickening and could not exclude retained products of conception;

e. In failing to include, pursue, and rule out postpartum endometritis and uterine infection as the source of Marisa's sepsis, notwithstanding her known risk factors of cesarean delivery and manual removal of the placenta;

f. In diagnosing and treating Marisa for pyelonephritis and a urinary tract infection in the absence of bacteriuria, flank pain, or other findings supporting that diagnosis, and in the presence of findings pointing to a uterine source;

g. In failing to appreciate the significance of Marisa's laboratory values, including a white blood cell count that rose from 22,500 to 58,000 to 83,600 to more than 106,000, a rising band count, a C-reactive protein of 15, and a serially rising lactic acid;

h. In failing to obtain timely source control of Marisa's uterine infection by dilation and curettage, hysterectomy, or other surgical means;

i. In discontinuing, or acquiescing in the discontinuation of, antibiotic coverage directed at obstetric pathogens while documenting that Marisa met the diagnostic criteria for endometritis;

j. In representing to the other physicians caring for Marisa that the obstetric service had examined her and appreciated no significant obstetric or postpartum concerns, when no pelvic examination had been performed;

k. In failing to timely consult infectious disease, maternal-fetal medicine, or gynecologic surgery;

l. In failing to timely transfer Marisa to a facility capable of providing the surgical source control her condition required; and

m. In such other particulars as the evidence may show and as may be developed through discovery.

81. The negligence of Drs. Werner and Blau was a direct and proximate cause of Marisa Warren's death. Had a pelvic examination been performed on December 7 or December 8, 2022, her uterine infection would have been identified. Had the uterine infection been identified, source control would have been obtained surgically and appropriate broad-spectrum antibiotics administered, and Marisa Warren, more likely than not, would have survived.

82. Each hour of delay in obtaining source control in a septic patient measurably increased Marisa's risk of death. The delay here exceeded fifty-five hours.

83. As a direct and proximate result of the negligence described above, the statutory beneficiaries of Marisa Warren have suffered and will continue to suffer damages recoverable under S.C. Code Ann. § 15-51-10, et seq., including: pecuniary loss, including the loss of Marisa's income, services, and support; mental shock and suffering; wounded feelings; grief and sorrow; loss of companionship; deprivation of the use and comfort of the decedent's society, including the loss of her experience, knowledge, and judgment in managing the affairs of herself and her beneficiaries; and funeral and burial expenses.

84. The loss to Marisa's daughter, who was sixteen days old at her mother's death and who will have no memory of her, is a lifetime loss of a mother's care, guidance, nurture, instruction, and companionship.

**COUNT II**
**Negligence — Survival Action**
**(S.C. Code Ann. § 15-5-90)**

85. Plaintiff realleges and incorporates by reference each preceding paragraph as though fully set forth herein.

86. Plaintiff brings this Count in his capacity as Personal Representative of the Estate of Marisa Warren, pursuant to S.C. Code Ann. § 15-5-90, for the injuries Marisa Warren sustained and endured before her death.

87. As a direct and proximate result of the negligence described above, Marisa Warren endured conscious physical pain and suffering over the more than sixty hours between her presentation to the Emergency Department and her death, including escalating pelvic and abdominal pain, nausea and vomiting, syncope and near-syncope, respiratory failure requiring intubation, renal failure, hemodynamic collapse, and a major abdominal operation.

88. Marisa Warren further endured conscious mental anguish, including the fear and distress of her own deterioration, and of leaving a newborn daughter and her husband, in the period before she was sedated and intubated.

89. The Estate of Marisa Warren has incurred medical, hospital, and related expenses arising from the care rendered from December 7, 2022, through December 9, 2022, together with funeral and burial expenses.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Matthew D. Warren, individually and as Personal Representative of the Estate of Marisa Warren, prays for judgment against the Defendant United States of America as follows:

1. For actual and compensatory damages on Count I, in an amount to be determined by the Court, not to exceed the sum certain stated in Plaintiff's administrative claim;
2. For actual and compensatory damages on Count II, in an amount to be determined by the Court, not to exceed the sum certain stated in Plaintiff's administrative claim;
3. For the costs of this action as allowed by law;
4. For post-judgment interest as allowed by law; and
5. For such other and further relief as this Court deems just and proper.

Respectfully submitted,

**McGOWAN, HOOD, FELDER & PHILLIPS, LLC**

s/ Daniel W. Luginbill
Julia M. Flumian (Fed. ID No. 77617)
Daniel W. Luginbill (Fed ID No. 07600)
10 Shem Drive, Suite 300
Mount Pleasant, South Carolina 29464
Telephone: (843) 268-0251
Facsimile: (843) 388-3194
jflumian@mcgowanhood.com
dluginbill@mcgowanhood.com
**ATTORNEYS FOR PLAINTIFF**

Mount Pleasant, South Carolina
September 29, 2026